# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NORTHWEST RIVER SUPPLIES, INC., an Idaho corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES; UNITED STATES CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection,<br><br>Defendants. | Case No. 25-00858<br><br>**Complaint** |

1. "[T]he Power to tax involves the power to destroy ... [and] the power to destroy may defeat and render useless the power to create". *McCulloch v. Maryland*, 17 U.S. 316, 431 (1819). Plaintiff Northwest River Supplies, Inc., an Idaho corporation, doing business as "NRS", which makes and sells river rafting boats, equipment and supplies, alleges that Defendant Donald J. Trump, acting as President of the United States, usurps from Congress the power to levy tariffs and unlawfully wields this power by whim and pique, laying waste by such tariffs to NRS' potential to create and prosper.

2.  If Congress were to give to a president the personal power to impose tariffs according to desire, which it has not, such a delegation of power would be unconstitutional.

3.  President Trump has pointed to the International Emergency Economic Powers Act of 1977, 50 U.S.C. § 1702 *et seq.* ("IEEPA"), as Congress' delegation to him of power to impose tariffs, but IEEPA does not provide such support. In *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, the United States Court of Appeals for the Federal Circuit affirmed this Court's decision (in Case No. 1:25-cv-00066-3JP, Doc. No. 55, 5/28/2025), as did the decision of the United States District Court for the District of Columbia in *Learning Resources, Inc., et al. v. Trump et al.*, Case No. 1:25-cv-01248-RC (Doc. No. 35), that these tariffs are unlawful.

4.  The United States Supreme Court accepted both *V.O.S. Selections* and *Learning Resources* for expedited review, heard arguments on November 5, 2025, and a decision is expected.

5.  Yet, "[t]axation, it is said, does not necessarily and unavoidably destroy. To carry it to the excess of destruction would be an abuse, to presume which would banish that confidence which is essential to all Government." *McCulloch*, 17 U.S. at 431.

6.  This action by NRS, therefore, seeks a declaration that the unlawful tariffs levied against it are barred by the Constitution, and further seeks recovery of the unlawful tariffs and an injunction against the liquidation of the unlawful tariffs already paid by NRS to Defendant United States Customs and Border Protection ("CBP"), as well as an injunction barring the CBP from continuing to levy such unlawful tariffs.

## JURISDICTION

7. The Court has subject matter jurisdiction under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*.

8. The Court possesses all the powers in law and equity of, or as conferred by statute upon, a district court of the United States. 28 U.S.C. § 1585. The Court may enter a money judgment for or against the United States in any civil action commenced under 28 U.S.C. § 1581 or 28 U.S.C. § 1582, and may order any other form of relief that is appropriate in a civil action, including declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

9. Plaintiff NRS has standing in this action as the importer of record for the goods subject to the unlawful IEEPA tariffs ordered by the President and collected by CBP.

## PARTIES

10. Plaintiff NRS is an Idaho corporation residing in the City of Moscow, County of Latah, in the State of Idaho.

11. NRS was established in 1972 in Moscow by Bill Parks, a professor in the College of Business at the University of Idaho, to make and sell river sports supplies, such as rafts, paddles, wetsuits, helmets, life preservers, apparel, and the like.

12. NRS has grown and has attained a preeminent reputation in its field. NRS employs 118 people in Idaho, as well as 13 people elsewhere in the United States.

13. Defendant Donald J. Trump is the President of the United States and is sued in his official capacity.

14. Defendant Executive Office of the President, headquartered in Washington, D.C., is the federal agency that oversees core functions of the executive branch, including the Office of the United States Trade Representative.

15. Defendant United States Customs and Border Protection ("CPB"), headquartered in Washington, D.C., is a federal agency and a component of the Department of Homeland Security, and is responsible for, among other things, collecting tariffs.

16. Defendant Rodney S. Scott is the Commissioner of CBP, and is sued in his official capacity.

## BACKGROUND FACTS

### The Executive Actions and the Challenged Tariffs

17. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Mexico, Canada, and China. Each of these executive orders declared a national emergency supported authorizing the tariffs under IEEPA.

18. The executive order directed at Mexico, *Imposing Duties To Address the Situation at Our Southern Border*, Executive Order 14194, 90 Fed. Reg. 9,117 (Feb. 7, 2025) ("Mexico Tariff Order"), imposed an additional 25 percent tariff on the import of goods from Mexico. The claimed emergency power was stated as the influx of illegal aliens and illicit drugs into the United States and Mexico's failure to stop them.

19. The executive order directed at Canada, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, Executive Order 14193, 90 Fed. Reg. 9,113, (Feb. 7, 2025) ("Canada Tariff Order"), imposed a 25% tariff, with certain exceptions, on goods imported from Canada, claiming an emergency arising from opioid trafficking.

20. The executive order directed at China, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, Executive Order 14195, 90 Fed. Reg. 9121 ("China Tariff Order"), imposed a 10% *ad valorem* tariff, in addition to existing duties, on products imported from China, again claiming an emergency arising from opioid trafficking.

21. On March 3, 2025, the President issued another Executive Order directed at China, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, ("March 7 China Tariff Amendment"), Executive Order 14228, 90 Fed. Reg. 11,463 (Mar. 7, 2025), doubling the incremental tariffs on imports from China to 20%, and asserting that China had "not taken adequate steps to alleviate the illicit drug crisis."

22. On April 2, 2025, President Trump declared "Liberation Day" by issuing an Executive Order "*Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*", Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025), imposing an additional *ad valorem* 10% minimum tariff on almost all imports to the United States, effective three days later, on April 5, 2025, as well as additional "reciprocal" tariffs on 57 countries, effective on April 9, 2025 ("Liberation Day Order").

23. On April 8, 2025, the President raised the tariff rate on China from 34% to 84%, in his "*Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*", Executive Order 14259, 90 Fed. Reg. 15509 (Apr. 14, 2025).

24. On April 9, 2025, the President issued an Executive Order "*Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*", Executive Order 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025), suspending country-specific tariffs for 90 days on all countries, except China, against which he raised the "reciprocal" tariff from 84% to 125%. Accounting for the 20% tariff on imports from China, imports from China faced a minimum 145% IEEPA tariff.

25. The Liberation Day Order states that IEEPA, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and section 301 of title 3, United States Code, grant the President power to impose the tariffs detailed above, but none of these statutes grants the President that power.

26. None of these statutes authorizes the President to impose tariffs. The President and CBP rely on IEEPA to impose and collect the duties, but IEEPA does not provide support.

27. The text of IEEPA does not use the word "tariff" or any term of equivalent meaning.

28. IEEPA grants the President certain powers, but only "to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

29. IEEPA allows the President to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities." 50 U.S.C. § 1702 (a)(1)(A).

30. The President may also control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and

which is also subject to United States jurisdiction. 50 U.S.C. § 1702(a)(1)(B).

31. When the United States is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign person or country that also is subject to United States jurisdiction. 50 U.S.C. § 1702(a)(1)(C).

32. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize or used by any other President to impose tariffs.

33. The United States Constitution vests in Congress the power to impose tariffs: "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises". U.S. CONST. art. I, § 8, cl. 1. Moreover, Congress is assigned power to "regulate Commerce with foreign Nations." *Id.*, cl. 3.

34. Congress has not delegated its power to impose tariffs to the President.

35. Courts, including this Court, have agreed the IEEPA duties are not authorized.

36. On May 28, 2025, in *V.O.S. Selections, Inc., et al. v. Trump, et al.*, Case No. 1:25-cv-00066-3JP, this Court enjoined the government from enforcing the IEEPA duties at issue. That decision was appealed to the Court of Appeals for the Federal Circuit.

37. On August 29, 2025, the Federal Circuit affirmed this Court's decision that the IEEPA duties are unlawful. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

38. A separate lawsuit in the United States District Court for the District of Columbia reached the same result, *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025), and was appealed to the Court of Appeals for the D.C. Circuit.

39. The tariffs at issue in this action and discussed herein, as well as at issue in the *V.O.S. Sections* and *Learning Resources* cases are hereinafter referred to as the "Challenged Tariffs".

40. The United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*, consolidated them, and heard argument on November 5, 2025.

### Implementation of unlawful tariffs and liquidation by CBP

41. CBP is charged with the assessment and collection of duties, including the IEEPA duties. 19 U.S.C. §§ 1500, 1502.

42. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988), setting out the tariff rates and statistical categories. 19 U.S.C. § 1202. The CBP has adopted regulations to classify and appraise merchandise imported into the United States consistent with the HTSUS. 19 C.F.R. § 152.11.

43. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification and rates by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

44. Typically, when goods enter the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

45. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. 19 U.S.C. §

1500.

46. Once the final amount of duty is determined by CBP, it then "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. 19 U.S.C. § 1504(b). "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

47. Liquidation, unless extended, must happen within one year. 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

48. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

49. This Court possesses the equitable authority to suspend liquidation. *E.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

50. Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking the CBP to "reliquidate" the duties. 19 U.S.C. § 1514. CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501. But, not all liquidations are protestable. Where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

51. This Court and the Federal Circuit have cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

### Plaintiff paid preliminary IEEPA duties

52. As of the date of this complaint, NRS has paid IEEPA duties imposed by the Challenged Tariffs.

53. The NRS imports subject to IEEPA and the Challenged Tariffs entered the United States under new HTSUS codes from foreign countries.

54. NRS has paid IEEPA duties from the Challenged Tariffs on a continuous basis.

55. The entries for which NRS has paid IEEPA duties imposed by the Challenged Tariffs are scheduled to begin to liquidate in late 2025 or early 2026.

56. Based on Plaintiff's knowledge and belief, CBP has advised importers that it will not be extending liquidation for entries subject to IEEPA duties from the Challenged Tariffs.

57. The impacts on NRS from the Challenged Tariffs imposed by the President are unprecedented, unlawful, and destructive to its business.

### <u>FIRST CLAIM FOR RELIEF</u>

### The President's action levying tariffs exceeds his statutory authority

58. Plaintiff realleges and incorporates by reference each and every allegation of the preceding paragraphs.

59. This Court, in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383

(Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), held that the President exceeded his authority under IEEPA when he imposed the Challenged Tariffs.

60. As the *V.O.S. Selections* Court explained, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency, does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

61. The United States Court of Appeals for the Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA and that reading IEEPA to permit such authority would raise grave constitutional concerns, including under the major questions and non-delegation doctrines.

62. The Challenged Tariffs at issue in this complaint are materially identical in structure, authority claimed, and effect to those struck down in *V.O.S. Selections*. They purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA. For the same reasons set forth in *V.O.S. Selections* and its affirmance by the Federal Circuit, those tariff orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

63. Plaintiff respectfully requests that this Court apply its precedent and the binding decision of the Federal Circuit, declare the Challenged Tariffs unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## SECOND CLAIM FOR RELIEF

## The Challenged Tariffs are unconstitutional

64. Plaintiff realleges and incorporates by reference each and every allegation of the preceding paragraphs.

65. Even if IEEPA were to construed as authorizing the Challenged Tariffs, the IEEPA tariff orders must then be held unlawful, because the IEEPA tariff orders would constitute an impermissible delegation of legislative power from Congress to the President.

66. The United States Constitution vests in Congress exclusively the power to "lay and collect … Duties." U.S. CONST. art. I, § 8, cl. 1.

67. Under separation-of-powers principles and binding precedent of the United States Supreme Court, Congress cannot delegate its power to the President unless, at the very least, it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that power, which IEEPA does not do.

68. Presidential authority to impose worldwide tariffs unilaterally, if Congress were to grant it at all, must be granted clearly and unmistakably, not impliedly and vaguely.

69. IEEPA does not mention tariffs or duties, or at any point suggest that it is granting the power to lay and collect such.

70. There is no precedent for using IEEPA to impose tariffs and no other President has ever done so or ever claimed the power to do so.

71. Congress knows how to grant the President authority to impose or adjust tariffs when it wishes to, and it has done so in more limited statutes contained in Title 19 of the United States Code.

72. The President has decided to avoid the limits on his authority imposed by Congress by finding a new and previously unseen authority in the IEEPA.

73. IEEPA does not grant the President power to impose tariffs, it does not mention or imply such a power, and the President's actions exceed the statutory authority Congress granted him.

74. "In the absence of a clear mandate in the Act, it is unreasonable to assume that Congress intended to give the [President] the unprecedented power over American industry that would result from the Government's view." *Indus. Union Dep't, AFL-CIO v. API*, 448 U.S. 607, 645 (1980).

75. The tariffs illegally imposed by the President irreparably harm Plaintiff, which will face disrupted supply chains, increased costs for the materials, components, and finished goods it sells, as well as decreased demand for the higher priced products.

76. The tariffs directly impact the ability of NRS to operate, as they will cause margins to evaporate, forcing a net loss. To correct this, Plaintiff would be forced to increase prices drastically, resulting in lower demand, further reduction in revenue, and risks to solvency. The compounded net effect on demand, the price elasticity of demand, will be significant, resulting in lower revenue across the board. Ultimately, this would force a scaling back on labor and a struggle for the continued existence of NRS.

77. Plaintiff therefore seeks a declaration that the Challenged Tariffs are unconstitutional as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## THIRD CLAIM FOR RELIEF

### Declaratory Relief (28 U.S.C. § 2201)

78. Plaintiff realleges and incorporates by reference each and every allegation of the preceding paragraphs.

79. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

80. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

81. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the Challenged Tariffs on goods it has imported into the United States.

82. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariffs are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

a. Declare that IEEPA grants the President no authority to impose tariffs unilaterally;

b. Declare that the President has not identified a valid national emergency as required by IEEPA and that the continued existence of trade deficits in goods is not in and of itself a national emergency;

c. Declare that the President has failed to make any showing of an "unusual and

      extraordinary threat" as required by IEEPA;

d.     Declare that, if Congress has granted the President unilateral authority to impose global tariffs of any amount at his whim, it is an unconstitutional delegation of legislative power;

e.     Enjoin the operation of the Challenged Tariffs;

f.     Award Plaintiff damages in the amount of any tariffs collected by Defendants pursuant to the Challenged Tariffs;

g.     Award Plaintiff other such damages as are appropriate;

h.     Award Plaintiff their attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and any other applicable law; and

i.     Grant any such other relief as this Court may deem just or proper.

          Respectfully submitted,

          /s/Duncan Palmatier

Dated: December 21, 2025       Law Office of Duncan Palmatier
          124 North Howard
          Moscow, Idaho 83843
          Tel:   (208) 892-2962
          e-mail:  dpalm@dpalmlaw.com

          Lawyer for Plaintiff,
              Northwest River Supplies, Inc.